IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

JEFFREY P. LAFFERTY,

                      Plaintiff,                  Case No. 3:08 CV 2647

-vs-

                                                        MEMORANDUM OPINION

NORFOLK SOUTHERN RAILWAY CO.

                      Defendant.

KATZ, J.

      Plaintiff Jeffrey Lafferty brings this action under the Federal Employers' Liability Act (FELA), 45 U.S.C. 51 et seq., against Defendant Norfolk Southern Railway Company ("NSRC"), his former employer. This matter is before the Court on Lafferty's motion for partial summary judgment as to liability and comparative fault (Doc. 25). His motion will be denied. Additionally, the Court will review the rather baroque FELA case law in order to narrow the issues for trial in this matter.

**I. Factual Background**

      At the time of his injury, Lafferty was employed a freight conductor for NRSC. On the evening of February 1, 2007, he was serving as the conductor on the 305 train from Columbus, OH to Bellevue, OH, when the conductor of a passing train alerted him to the fact that one of his railcars, either the "sixth head car" or the "seventh head car" (the designation refers to car's distance from the front of the train) was throwing sparks. The 305 's engineer brought the train to a stop, and Lafferty walked out to investigate the cause of the sparking. Hearing air blowing from the brakes of the seventh head car, which was on the other side of the train, Lafferty began climbing the railcar in front of him in order to inspect the adjacent car. In the process of trying to

surmount the railcar, he slipped and dislocated his ankle severely enough to preclude him from further work as a train conductor.

## II. Summary Judgment Standard

Pursuant to Federal Civil Rule 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, a court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, a court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

## III. FELA/SAA Background

Lafferty contends that his injury was caused by "sticking brakes" on the seventh head car of the train he was operating, which caused that car to throw sparks. This forced Lafferty to stop the train and investigate the cause of the sparking when he was alerted to it, allegedly leading to his injury. Citing to two regulations promulgated by the Federal Railroad Administration (FRA), 49 C.F.R. § 232.9 and 49 C.F.R. § 232.103, Lafferty argues that it was unlawful for CSXT to operate a railroad car with defective breaks.

> In relevant part, 49 C.F.R. § 232.103(f) provides:
> Each car in a train shall have its air brakes in effective operating condition unless the car is being moved for repairs in accordance with § 232.15. The air brakes on a car are not in effective operating condition if its brakes are cut-out or otherwise inoperative.

2

An "inoperative" brake is defined as "a primary brake that, for any reason, no longer applies or releases as intended." 49 C.F.R. § 232.5. To "respond as intended" is "to produce the result that a device or system is designed to produce." 49 C.F.R. § 232.5. Lafferty claims that the air brake on the seventh head car was not "responding as intended" to the extent it caused the car's wheels to emit sparks.

Historically, courts found the requirement that train cars have effective air brakes in the Safety Appliance Act ("SAA"), now codified in a different form at 49 U.S.C. §§ 20301 et seq. (the old version, repealed in 1994, was at 45 U.S.C. §1). See *Coray v. Southern Pacific Co.*, 335 U.S. 520 (1949) (finding that a railroad's operation of a car with defective air brakes violated the SAA). The unqualified command of 49 C.F.R. § 232.103(f) that air brakes be in effective operating condition does not appear to differ from the standards courts have identified under the SAA[1], and, in any event courts still generally treat these issues under the body of case law that has

---

[1] In connection with its response brief, NSRC presented this Court with an affidavit from Fred Dennin, a former FRA official, who purports to provide "expert testimony" on the meaning of the FRA regulations at issue in this case. Of course, this is not a proper subject for expert testimony, and he certainly cannot testify at trial on these matters.

This is especially so since Dennin's arguments are entirely incorrect. For example, Dennin suggests that any air brake failure in this case would fall within the exception identified in § 232.103(f) for a "car . . . being moved for repairs in accordance with 49 C.F.R. § 232.15." But that provision only applies if "[t]he railroad first discovers the defective condition of the car . . . prior to moving it for repair," 49 C.F.R. § 232.15(a)(3), and no one contends that the railcar in this case was being hauled for repairs when it began sparking.

Dennin further argues that the interaction of 49 C.F.R. § 232.103(a), requiring that 100% of a train's brakes be "operable and effective" after a mandatory inspection, and § 232.103(e), providing that a train "shall not move" if less than 85% of its cars have operable and effective brakes, creates a 15% "margin for error" for brake defects that occur when a train is en route after a successful inspection. But the FRA's interpretation of that provision again makes clear that § 232.103(e) is only supposed to apply to railcars with known defects that are being hauled for repair. See 66 FR *4104, *4154.

Thus, there does not appear to be any question that the unqualified language of § 232.103(f) is to be taken at face value.

3

developed around the SAA. See *Richards v. Consolidated Rail Corp.*, 330 F.3d 428, 432 (6th Cir. 2003) ("The SAA imposes an absolute duty on railroads to provide and maintain certain safety appliances, including power braking systems.").

It has long been settled that there exists a special relationship between the SAA and FELA, such that a finding that the SAA has been violated is itself sufficient to establish fault in a FELA suit. See *Kernan v. American Dredging Co.*, 355 U.S. 426, 444-448 (1958) (Harlan, J., dissenting) (discussing the "intimate relationship" between the two statutes). Under *Coray v. Southern Pacific Co.*, 335 U.S. 520, 523 (1949), the elements of a plaintiff's hybrid FELA/SAA suit are two-fold: the *evidence* must establish an SAA violation, and the statutory violation must be "the sole or a contributory proximate cause of the decedent's employee's death." Accord *Richards*, 330 F.3d 428, 432 (6th Cir. 2003). No showing of employer negligence is required in these actions. See *O'Donnell v. Elgin, J & E. R. Co.*, 338 U.S. 384, 390 (1949) (in FELA cases, violation of the SAA "is in itself an actionable wrong, in no way dependent upon negligence and for the proximate results of which there is liability").

Relying on *Erskine v. Consolidated Rail Corp.* 814 F.2d 266, 271 (6th Cir.1987) and *Allen v. Soo Line R.R. Co.*, 2001 WL 1222183 (S.D. Ind., Apr. 4 2001), NSRC argues that there is a further requirement for a plaintiff to prevail in a FELA/SAA suit: his injury must be of the type the regulation was intended to prevent. Because the primary concern of the air brake regulations is that the engineer be able to control the movement of the train, NSRC argues that recovery under FELA/SAA cannot be had in cases like this, where the brake malfunction was not severe enough to prevent the train from being able to stop effectively.

This argument is not well taken. NSRC would have this Court import the hoary common-law refinements of negligence *per se* doctrine into FELA/SAA cases, despite the Supreme Court's admonition that "this Court early swept all issues of negligence out of cases under the Safety Appliance Act." *O'Donnell*, 338 U.S. 384, 390 (1949). Indeed, in his majority opinion in *O'Donnell*, Justice Jackson carefully rejected the notion that, in FELA cases, evidence of an SAA violation should be treated under the old common-law doctrines of negligence *per se* or *res ipsa loquitur*. *Id*. at 389-392.

In *Coray*, moreover, the Court rejected the argument that the purpose of the SAA, "insofar as brakes might be concerned, is not to protect employees from standing, but from moving trains." *Id*., 335 U.S. at 522. Instead, *Coray* held that the SAA's purpose is coextensive with the literal import of its prohibitory terms: "It commands railroads not to run trains with defective brakes." *Id*. Thus, this Court declines to follow *Erskine* and *Allen*, as the proposed distinction between a dangerous brake malfunction that does not bring the train to a physical stop, and one that does, appears to be wholly arbitrary.

**IV. Issues for Trial**

*A. Violation of Air Brake Regulations*

With respect to the first element of his FELA/SAA claim, the Court finds that Lafferty has not demonstrated the absence of a genuine issue of material fact as to whether the sparking observed by the passing train in this case was, in fact, caused by an unintended brake application. The testimonial material that is in the record regarding the reasons for the sparking does not provide a clear basis for this Court's finding that there is no genuine issue of material fact as to it being caused by a brake malfunction. Granting Lafferty's motion would require this Court to

5

impermissibly give him the benefit of the doubt as to the inferences that may be drawn from frequently opaque and confusing deposition testimony. Moreover, to the extent that the jury has an expanded role in FELA actions, see *Rogers v. Missouri Pac. R. Co.*, 352 U.S. 500, 510 (1957) ("Congress vested the power of decision in these actions exclusively in the jury in all but the infrequent cases"), *Richards*, 330 F.3d 428, 434 (noting the "significantly greater" role of the jury in FELA cases), granting summary judgment on this record would be especially inappropriate.

FELA's comparative negligence defense may not be asserted in a case where the defendant's violation of a "statute enacted for the safety of employees" contributed to the employee's injury. See 45 U.S.C. § 53. But because there exists an issue of material fact as to whether NSRC violated the air brake regulations, Lafferty is also not entitled to summary judgment as to comparative negligence.

## *B. Causation*

With respect to the causation element of a FELA/SAA claim, the Sixth Circuit's decision in *Richards*, 330 F.3d 428 (6th Cir. 2003), is instructive.[2] The plaintiff in *Richards* was a conductor on a train that stopped as a result of an unexpected application of the train's emergency brake system. Like Lafferty, the *Richards* plaintiff's injury occurred as he was performing a required inspection of the stationary train. *Id*. at 431. Rejecting the distinction formulated in *Reetz v. Chicago & E.R. Co.*, 46 F.2d 50 (6th Cir. 1931) between "direct cause" and "incidental cause" in FELA/SAA cases, *Richards* held that the test for causation in FELA cases is whether the

---

[2] Though there is some dispute as to whether traditional proximate cause concepts can be reconciled with the holding of *Coray* that the violation need only be a "contributory" cause of the FELA plaintiff's injury, Justice Souter's persuasive concurring opinion in *Norfolk Southern R. Co. v. Sorrell*, 549 U.S. 158, 172-177 (2007), indicates that proximate cause remains an element in FELA/SAA suits.

plaintiff's injury "was within the risk created by" the SAA violation. A verdict on the matter may only be directed in cases where the "the connection between the defective appliance and the plaintiff's injuries become too attenuated to conclude that the defect caused the injury." *Richards*, 330 F.3d at 437 n. 5 (6th Cir. 2003). An example of such a situation would be a case where "a train goes into an emergency stop due to defective air brakes; and an employee, who has exited the train and is standing next to it merely waiting for the brakes to be repaired, is attacked by a rabid dog." *Id*.

In the present case, there appears to be sufficient evidence to support a jury finding that the defective brake application was the cause of Lafferty's injury in the present case. Just as the plaintiff in *Richards* was injured because he was obligated to undertake an investigation of the cause of the sudden application of the emergency brake, so Lafferty was obligated to stop his train upon the report of sparking and undertake an investigation.

**IV. Conclusion**

For the above reasons, Lafferty's motion for partial summary judgment (Doc. 25) is denied

IT IS SO ORDERED.

                                                     s/ *David A. Katz*
                                                     DAVID A. KATZ
                                                     U. S. DISTRICT JUDGE.